**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

|  |  |
|---|---|
| JUDITH VERGIEN and MARIA NELSON, on behalf of themselves and all others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>THE KRAFT HEINZ COMPANY,<br><br>　　　　　Defendant. | **CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Case No. 1:25-cv-15557 |

Plaintiffs Judith Vergien and Maria Nelson, on behalf of themselves and all others similarly situated, bring this class action suit for damages and equitable relief against The Kraft Heinz Company ("Kraft Heinz" or "Defendant"). Plaintiffs allege the following based upon personal information as to allegations regarding themselves, and the investigation of their counsel, and on information and belief as to all other allegations:

## TABLE OF CONTENTS

NATURE OF THE ACTION ................................................................................................1

THE PARTIES.................................................................................................................3

JURISDICTION AND VENUE ............................................................................................4

FACTUAL ALLEGATIONS ...............................................................................................4

      A.     Defendant Markets the Lemonade Products as Free of Artificial Flavors..............4

      B.     The Citric Acid in the Lemonade Products Is Manufactured, Not Naturally Derived................................................................................................................13

      C.     The Lemonade Products Contain Artificial Ingredients Contrary to Defendant's Claims ...............................................................................................................16

      D.     These Misrepresentations Are Material to Consumers ........................................21

CLASS ACTION ALLEGATIONS .....................................................................................22

FIRST CAUSE OF ACTION .............................................................................................26

SECOND CAUSE OF ACTION .........................................................................................28

THIRD CAUSE OF ACTION ............................................................................................30

FOURTH CAUSE OF ACTION .........................................................................................32

FIFTH CAUSE OF ACTION .............................................................................................34

SIXTH CAUSE OF ACTION ............................................................................................35

PRAYER FOR RELIEF ...................................................................................................36

**NATURE OF THE ACTION**

1.      Defendant manufactures, markets, and sells Country Time Lemonade in several formats, including, relevant here, Lemonade Drink Mixes, Lemonade Drink Pouches, and Lemonade Drink Bottles (collectively, "the Lemonade Products").








2.     Defendant prominently markets the Lemonade Products as containing "No Artificial Flavors" and being "Naturally Flavored." But these representations are both false and misleading. Today, over ninety-nine percent of all citric acid in commercial food products is not naturally produced but, instead, is synthetically derived from a form of black mold. Upon information and belief, the Lemonade Products contain manufactured citric acid for flavor, yet Defendants' false and misleading statements conceal this fact.

3.     In addition, the Lemonade Products contain other artificial ingredients that impart flavor, including sodium citrate, potassium citrate, and maltodextrin.

4.     Defendant's false and misleading statements caused Plaintiffs and members of the proposed classes to pay a price premium for the Products. Had they known the truth, Plaintiffs and members of the proposed classes would not have purchased the Products or would have paid less.

5.     Plaintiffs seek monetary and injunctive relief against Defendant for violating New York General Business Law ("GBL") §§ 349–50; the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*; the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*; and the common-law prohibition on unjust enrichment.

## THE PARTIES

6.     Plaintiff Judith Vergien is a New York resident. She has purchased Country Time Pink Lemonade Drink Mix, most recently in November 2025 from Tops Supermarket. Plaintiff relied on Defendant's representations that the Pink Lemonade Drink Mix contained "No Artificial Flavors" and would not have purchased the Pink Lemonade Drink Mix, or would have paid less, had she known the truth.

7.     Plaintiff Maria Nelson is a California resident. She has purchased Country Time Lemonade Drink Mix, most recently in November 2025 from Walmart. Plaintiff relied on Defendant's representations that the Lemonade Drink Mix contained "No Artificial Flavors" and would not have purchased the Lemonade Drink Mix, or would have paid less, had she known the truth.

8.     Defendant The Kraft Heinz Company is a Delaware corporation and is headquartered in Chicago, Illinois. Defendant is the "third-largest food and beverage company in

North America and the fifth-largest food and beverage company in the world[.]"[1] Kraft Heinz owns, manufacturers, and markets the Country Time brand, including the Lemonade Products at issue in this action.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

10.     This Court also has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because the aggregate amount in controversy exceeds $5 million, exclusive of interests and costs; more than 100 class members are involved; and many members of the proposed Classes are citizens of different states than the Defendant.

11.     This Court has personal jurisdiction over Defendant because it is headquartered in Chicago, Illinois, committed the tortious acts alleged herein in Illinois, regularly conducts business in this District, and has extensive contacts with this forum.

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant resides in this District, a substantial part of the events or omissions giving rise to the claim occurred in this District. and Defendant transacts substantial business in this District.

## FACTUAL ALLEGATIONS

A.     **Defendant Markets the Lemonade Products as Free of Artificial Flavors**

13.     Under 21 C.F.R. § 101.22(a)(1), an artificial flavor is defined as "any substance, the function of which is to impart flavor, which is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof."

---

[1] https://www.kraftheinzcompany.com/

14. Reasonable consumers understand the phrase "artificial flavor" in its ordinary, everyday sense: artificial, meaning something created by humans but "made . . . to seem like something natural,"[2] and flavor meaning "affect[ing] the sense of taste."[3]

15. Consistent with these understandings, Defendant prominently markets the Lemonade Products as containing "No Artificial Flavors," including on the front labels of Lemonade Drink Mixes:

 

---

[2] https://www.merriam-webster.com/dictionary/artificial

[3] https://www.merriam-webster.com/dictionary/flavor

- 5 -







 

16.     Defendant repeats this claim on Lemonade Drink Pouches:







17.  On the Standard Lemonade Drink Pouches, Defendant also claims that the Pouches contain no artificial preservatives.

- 8 -

18.     Defendant reiterates the "No Artificial Flavors" representation on Standard Lemonade Drink Bottles:



19.     On the back panels of various Lemonade Products, Defendant further states: "And did you know that Country Time Lemonade has no Artificial Sweeteners, or Flavors?" or "And did you know that Country Time Lemonade has no Artificial Flavors?"





20. Defendant reinforces these representations online by appending "Naturally Flavored" to product names and reiterating "No Artificial Flavors or Sweeteners" in product descriptions and image carousels:

---

[4] https://www.walmart.com/ip/Country-Time-Lemonade-Naturally-Flavored-Powdered-Drink-Mix-23-9-oz-Canister/14869683?classType=VARIANT&athbdg=L1200

[5] https://www.walmart.com/ip/Country-Time-Strawberry-Lemonade-Naturally-Flavored-Powdered-Drink-Mix-18-oz-Canister/10292769

- 10 -



*Lemonade Products sold on Walmart.com*



*Standard Lemonade Drink Mix product description on Costco.com*

---

6 https://www.walmart.com/browse/country-time/YnJhbmQ6Q291bnRyeSBUaW1l

7 https://www.costco.com/p/-/country-time-drink-mix-lemonade-825-oz/100381589?langId=-1

## About this item

- VARIETY - This pack of 2 includes 1 82.5oz canister of Country Time Lemonade Powdered Drink Mix and 1 82.5oz canister of Country Time Naturally Flavored Pink Lemonade Powdered Drink Mix - the ultimate variety bundle!

- REFRESHING - Nothing says cooling down like a freshly made glass of lemonade, pink or regular, on a hot day. Great for the whole family!

- EASY SCOOP - Each resealable canister comes with an easy-measure scoop to help you have the best consistency!

- BONUS GIFT - Each unit includes a Global Basics branded reusable plastic straw set, complete with a buildable straw, cleaner, and carrying case!

- TRANSPARENCY - This product comes packaged in a branded Global Basics box and is made with real sugar, naturally flavored and contains NO artificial sweeteners or flavors! Every unit also includes a branded Global Basics Reusable Straw Set. [8]

*Pink Lemonade Drink Mix product description on Amazon.com*





*Graphic in image carousel on Target.com* [9]     *Graphic in image carousel on Kroger.com* [10]

---

[8] https://www.amazon.com/dp/B0CWVVVXBH/

[9] https://www.target.com/p/country-time-drink-mix/-/A-95074437?preselect=84846283#lnk=sametab

[10] https://www.kroger.com/p/country-time-lemonade-drink-mix-canister/0004300008219

21.     These claims are widespread and appear at multiple points in consumers' interactions with the Products. Nonetheless, these claims are false and misleading.

**B.      The Citric Acid in the Lemonade Products Is Manufactured, Not Naturally Derived**

22.     "Citric acid as a food additive"—like that in the Lemonade Products—"is not natural citric acid; it is manufactured through fermentation using *Aspergillus niger*."[11]

23.     Although citric acid occurs naturally in citrus fruits, commercial extraction from fruit is not feasible at scale. Natural sources such as lime, lemon, and orange cannot produce the quantities demanded by the modern food and beverage industry, rendering extraction from such sources economically inefficient.[12]

24.     The same is true for chemical synthesis, another method for producing citric acid; there, "the starting materials are worth more than the final product."[13]

25.     Microbial fermentation is the only commercially viable method of producing manufactured citric acid ("MCA") at scale for the food and beverage industry, and it is now the dominant method of citric acid production. "About 99% of world production of citric acid occurs via microbial processes[.]"[14]

26.     Microbial fermentation predominantly uses a mutant strain of the black mold *Aspergillus niger*,[15] which "account[s] for approximately 90% of global production."[16] This strain

---

[11] https://pmc.ncbi.nlm.nih.gov/articles/PMC6097542/

[12] https://pmc.ncbi.nlm.nih.gov/articles/PMC11956825/

[13] https://openchemicalengineeringjournal.com/VOLUME/13/PAGE/88/FULLTEXT/

[14] https://pmc.ncbi.nlm.nih.gov/articles/PMC3769771/; *see also* https://elchemy.com/blogs/citric-acid-reports/how-is-citric-acid-manufactured

[15] https://pmc.ncbi.nlm.nih.gov/articles/PMC6097542/

[16] https://pmc.ncbi.nlm.nih.gov/articles/PMC11204724/

is "superior" to other microorganisms because of its high yield and easy handling.[17] In this process, cheap raw materials, usually refined sugar,[18] are fermented using *Aspergillus niger*, which biosynthesizes citric acid through microbial metabolism[19] under tightly controlled industrial conditions. The citric acid is not extracted from citrus fruit or any other naturally occurring source but is created during fermentation as a metabolic product of the microorganism.

27. Following fermentation, the citric acid undergoes industrial "recovery and purification."[20] Citric acid recovery refers to the set of industrial steps used after fermentation to separate, purify, and isolate citric acid from the fermentation mixture so that it can be used as a commercial food ingredient. Describing recovery as part of the "[b]iotechnological production of citric acid," scientists explain:

> The first step of citric acid recovery involves the precipitation of oxalic acid, possibly in the form of calcium oxalate at low pH, and subsequent separation from the medium containing the mycelium through rotating filters or centrifuges. Citric acid is then precipitated at pH 7.2 and 70–90 °C and recovered by filtration and drying. If a purer product were desired, it is dissolved with sulfuric acid, treated with charcoal or ion exchange resins, and again crystallized as anhydrous citric acid (above 40 °C) or as a monohydrate (below 36.5 °C) (60).[21]

28. The manufacture of MCA involves multi-step industrial fermentation, chemical processing, and purification, rather than extraction from a naturally occurring food source. MCA is "not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb,

---

[17] https://gsconlinepress.com/journals/gscbps/sites/default/files/GSCBPS-2021-0313.pdf

[18] https://pmc.ncbi.nlm.nih.gov/articles/PMC11956825/

[19] https://www.sciencedirect.com/science/article/pii/S0023643812002332

[20] https://elchemy.com/blogs/food-nutrition/how-citric-acid-is-produced-the-process-behind-this-common-food-additive

[21] https://pmc.ncbi.nlm.nih.gov/articles/PMC3769771/

bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products." *See* 21 C.F.R. § 101.22(a)(1). Seventy percent of all MCA produced in this way is used as a food or beverage additive,[22] making fermented MCA "one of the most common additives in food and beverage products across the world."[23]

29.     Research suggests that this MCA may be associated with recurrent inflammatory or allergy-like reactions, including respiratory, gastrointestinal, and musculoskeletal symptoms in some individuals.[24]

30.     Defendant sells its Lemonade Products nationwide through some of the largest brick-and-mortar and online retailers, including Walmart, Kroger, Costco, Albertsons Companies—the four largest U.S. supermarket operators—and other large retailers such as Sam's Club, Safeway, Vons, Target, Amazon, Publix, Giant Eagle, H-E-B, Dollar General, Stop & Shop, Food Lion, and Giant Food.[25] As the "third-largest food and beverage company in North America and the fifth-largest food and beverage company in the world,"[26] it would be commercially infeasible for Defendant to source citric acid through any method other than microbial fermentation.

31.     Defendant manufactures and distributes the Lemonade Products using uniform formulations. Maintaining consistency in taste, acidity, and shelf stability at this scale requires standardized ingredient sourcing. Moreover, Defendant does not disclose any specialty sourcing

---

[22] https://pmc.ncbi.nlm.nih.gov/articles/PMC6097542/

[23] https://www.epa.gov/system/files/documents/2023-03/Citric+Acid+Supply+Chain+Profile.pdf

[24] https://pmc.ncbi.nlm.nih.gov/articles/PMC6097542/

[25] https://passby.com/blog/top-grocery-supermarkets-foot-traffic-data/

[26] https://www.kraftheinzcompany.com/

production method or other premium or atypical citric acid process for the Lemonade Products. If Defendant chose to deviate from industry practice, presumably, it would have disclosed that fact.

32.     In short, the scale of Defendant's operations, nationwide distribution, and reliance on standardized formulations give rise to a plausible inference that the citric acid used in the Lemonade Products is sourced through conventional industrial fermentation, consistent with industry practice.

## C.     The Lemonade Products Contain Artificial Ingredients Contrary to Defendant's Claims

33.     Contrary to Defendant's claims of "No Artificial Flavors" and "Naturally Flavored," the Lemonade Products contain an artificial flavoring ingredient. Specifically, they incorporate MCA, a synthetically produced compound that materially shapes the flavor profile of the Lemonade Products.

34.     Citric acid is widely used in the food and beverage industry, including as a flavoring agent. It imparts tartness, tanginess, and sourness—sensory attributes that constitute "flavor" under 21 C.F.R. § 101.22(a)(1) because they directly affect the taste of a finished food.

35.     Owing to its distinct and potent taste, citric acid is routinely used to create or enhance tart, tangy, and sour flavors in food and beverage products. These sensory effects are defining elements of lemonade, and citric acid therefore functions to impart flavor.

36.     Citric acid is a prominent ingredient in Defendant's Lemonade Products, appearing near the top of the list of ingredients. Representative ingredient lists are included below.

37.    Standard Lemonade Drink Mix:[27]

SUGAR, FRUCTOSE, CITRIC ACID, CONTAINS LESS THAN 2% OF MALTODEXTRIN, SODIUM ACID PYROPHOSPHATE, MAGNESIUM OXIDE, SODIUM CITRATE, ASCORBIC ACID (VITAMIN C), NATURAL FLAVOR, ARTIFICIAL COLOR, YELLOW 5 LAKE, **SOY** LECITHIN, TOCOPHEROL (PRESERVE FRESHNESS).

38.    Pink Lemonade Drink Mix:[28]

SUGAR, FRUCTOSE, CITRIC ACID, CONTAINS LESS THAN 2% OF MALTODEXTRIN, SODIUM ACID PYROPHOSPHATE, MAGNESIUM OXIDE, SODIUM CITRATE, ASCORBIC ACID (VITAMIN C), ARTIFICIAL COLOR, NATURAL FLAVOR, **SOY** LECITHIN, RED 40, RED 40 LAKE, TOCOPHEROL (PRESERVES FRESHNESS).

39.    Strawberry Lemonade Drink Mix:[29]

SUGAR, FRUCTOSE, CITRIC ACID, CONTAINS LESS THAN 2% OF ASCORBIC ACID (VITAMIN C), NATURAL FLAVOR, **SOY** LECITHIN, MAGNESIUM OXIDE,XANTHAN GUM, ARTIFICIAL COLOR, RED 40, RED 40 LAKE.

---

[27] https://www.kraftheinz.com/country-time/products

[28] *Id.*

[29] *Id.*

40.     Cherry Lemonade Drink Mix:[30]

SUGAR, FRUCTOSE, CITRIC ACID, CONTAINS LESS THAN 2% OF MALTODEXTRIN, SODIUM ACID PYROPHOSPHATE, MAGNESIUM OXIDE, SODIUM CITRATE, NATURAL FLAVOR , ASCORBIC ACID (VITAMIN C), RED 40, ARTIFICIAL COLOR, RED 40 LAKE, **SOY** LECITHIN, BLUE 1.

41.     Standard Lemonade Drink Pouch:[31]

WATER, SUGAR, CONTAINS LESS THAN 2% OF CITRIC ACID, POTASSIUM CITRATE, NATURAL FLAVOR, GLYCEROL ESTERS OF WOOD ROSIN, ROSEMARY EXTRACT (TO PROTECT FLAVOR).

42.     Strawberry Lemonade Drink Pouch:[32]

WATER, SUGAR, CONTAINS LESS THAN 2% OF CITRIC ACID, POTASSIUM CITRATE, GLYCEROL ESTERS OF WOOD ROSIN, ROSEMARY EXTRACT (TO PROTECT FLAVOR), NATURAL FLAVOR.

43.     Peach Lemonade Drink Pouch:[33]

WATER, SUGAR, CONTAINS LESS THAN 2% OF CITRIC ACID, POTASSIUM CITRATE, GLYCEROL ESTERS OF WOOD ROSIN, ROSEMARY EXTRACT (TO PROTECT FLAVOR), SUCRALOSE, NATURAL FLAVOR.

---

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] *Id.*

44.     Standard Lemonade Drink Bottle:[34]

WATER, SUGAR, CONTAINS LESS THAN 2% OF CITRIC ACID, POTASSIUM CITRATE, SODIUM POLYPHOSPHATE, ASCORBIC ACID (VITAMIN C), NATURAL FLAVOR, ROSEMARY EXTRACT (TO PROTECT FLAVOR), YELLOW 5, CALCIUM DISODIUM EDTA AND POTASSIUM SORBATE (PRESERVE FRESHNESS).

45.     In all of the Lemonade Products listed above, citric acid appears as the third-most present ingredient and always precedes "Natural Flavor." Its repeated prominence across the Lemonade Products demonstrates that citric acid contributes materially to their taste and flavor system. If citric acid were removed or substantially reduced, the taste of the Lemonade Products would be materially altered. Citric acid supplies the tart and sour flavor central to lemonade and necessarily functions "to impart flavor" to the Lemonade Products.

46.     Defendant underscores citric acid's flavoring function by advertising its Lemonade Drink Mix as having a "[c]lassic sweet and tart lemonade flavor."[35] Citric acid is the primary source of the advertised "tart" taste in the Lemonade Products. It is therefore a "substance, the function of which is to impart flavor" within the meaning of 21 C.F.R. §101.22(a)(1).

47.     The Lemonade Products contain other artificial ingredients that impart flavor.

48.     Sodium citrate—"prepared by neutralizing citric acid with sodium hydroxide or sodium carbonate"[36]—is present in the Lemonade Drink Mix, Pink Lemonade Drink Mix, and

---

[34] *Id.*

[35] https://www.walmart.com/ip/Country-Time-Lemonade-Naturally-Flavored-Powdered-Drink-Mix-23-9-oz-Canister/14869683?classType=VARIANT&athbdg=L1200

[36] *See* 21 C.F.R. § 184.1751(a).

Cherry Lemonade Drink Mix. Sodium citrate has "a sour taste"[37] and, by design, contributes to the sour flavor profile of these Lemonade Products.

49.     Potassium citrate—"prepared by neutralizing citric acid with potassium hydroxide or potassium carbonate"[38]—is present in the Lemonade Drink Pouches, Strawberry Lemonade Drink Pouches, Peach Lemonade Drink Pouches, and Lemonade Drink Bottles. Potassium citrate imparts "a tangy citrus flavor"[39] and therefore contributes to the taste of these Lemonade Products.

50.     Maltodextrin, "an artificial food additive,"[40] is present in the Lemonade Drink Mix, Pink Lemonade Drink Mix, and the Cherry Lemonade Drink Mix. Maltodextrin is added to "increase the overall palatability" and "mask the bitterness" of food.[41] Maltodextrin necessarily contributes to the flavor profile of these Lemonade Products.

51.     In addition to falsely claiming the Lemonade Products contain no artificial flavors, Defendant represents on the front of the Standard Lemonade Drink Pouches that they contain no artificial preservatives: "No Artificial Colors, Flavors, Preservatives, or Sweeteners." Citric acid, however, "acts as a preservative . . . by slowing or helping prevent the formation of bacteria, mold, yeast, and fungus."[42] Therefore, the Standard Lemonade Drink Pouches contain an artificial preservative.

---

[37] https://pubchem.ncbi.nlm.nih.gov/compound/Sodium-Citrate

[38] *See* 21 C.F.R. § 184.1625(a).

[39] https://www.bellchem.com/news/potassium-citrate-in-food-production

[40] https://www.medicalnewstoday.com/articles/322426#summary

[41] https://elchemy.com/blogs/food-nutrition/maltodextrin-uses-in-the-food-industry-why-its-a-common-ingredient-in-your-diet

[42] https://www.medicalnewstoday.com/articles/citric-acid#uses

**D.     These Misrepresentations Are Material to Consumers**

52.     Consumers increasingly seek out products marketed as natural. A 2024 consumer study found that 81 percent of shoppers consider it important to purchase "clean label" products—those with as "few ingredients as possible, easy-to-recognize ingredients, and no artificial ingredients or synthetic chemicals."[43] Statements like "No Artificial Flavors" and "Naturally Flavored" strongly influence purchasing decisions, steering these consumers to choose and pay more for products that prominently make clean label claims over those that do not.

53.     Defendant's "No Artificial Flavors" and "Naturally Flavored" statements are a part of a deliberate marketing strategy designed to capitalize on this demand. Defendant knows that consumers place a premium on products free of artificial flavors and that such claims materially increase marketability and sales. But those statements are false.

54.     As alleged above, the Lemonade Products contain manufactured citric acid, as well as sodium citrate, potassium citrate, and maltodextrin for flavor. None of these chemicals are derived from any natural source.

55.     Consumers who sought to avoid artificial flavors reasonably relied on Defendant's representations and did not receive the natural, wholesome product they believed they were purchasing. Defendant, meanwhile, obtained an unfair competitive advantage and extracted a price premium based on this deceptive and material misrepresentations.

56.     Defendant charges a premium for the Lemonade Products, and that premium is tied directly to its "No Artificial Flavors" marketing. By falsely presenting the Lemonade Products as

---

[43] https://www.acosta.group/clean-label-products-driving-retail-sales-as-they-gain-preference-among-consumers/

free of artificial additives and artificial flavors, Defendant positioned them as superior to any competing products that truthfully disclose artificial flavoring.

57.     Defendant's conduct misleads reasonable consumers, distorts competition, and, ultimately, results in economic harm. Consumers paid more than they otherwise would have for a product that was not what it claimed to be. This widespread deception has not only caused financial harm to consumers but works to erode trust in the truth of product labeling and marketing.

## CLASS ACTION ALLEGATIONS

58.     Plaintiffs bring this action on behalf of themselves and on behalf of the following proposed Nationwide Class, initially defined as follows:

> All individuals in the United States who purchased a Lemonade Product within the relevant limitations period, and/or such subclasses as the Court may deem appropriate.

59.     Plaintiff Judith Vergien also brings this action on behalf of herself and on behalf of the following proposed New York Subclass, initially defined as follows:

> All individuals in New York who purchased a Lemonade Product within the relevant limitations period, and/or such subclasses as the Court may deem appropriate.

60.     Plaintiff Maria Nelson also brings this action on behalf of herself and on behalf of the following proposed California Subclass, initially defined as follows:

> All individuals in California who purchased a Lemonade Product within the relevant limitations period, and/or such subclasses as the Court may deem appropriate.

61.     Excluded from the proposed Classes are Defendant and its parents, subsidiaries, affiliates, officers, and directors, and any entity in which Defendant has a controlling interest.

62.     Plaintiffs reserve the right to re-define any of the class definitions prior to class certification and after having the opportunity to conduct discovery.

63. The claims of all class members derive directly from a single course of conduct by the Defendant. Defendant has engaged and continues to engage in uniform and standardized conduct toward the putative class members. Defendant does not differentiate, in degree of care or candor, in its actions or inactions, or the content of its statements or omissions, among individual class members.

64. Certification of Plaintiffs' claims is appropriate because Plaintiffs can prove the elements of Plaintiffs' claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

65. Accordingly, Plaintiffs bring this lawsuit as a class action on Plaintiffs' own behalf and on behalf of all other individuals similarly situated pursuant under Rule 23 of the Federal Rules of Civil Procedure. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

66. Specifically, this action has been properly brought and may properly be maintained as a class action under Rule 23(a)(1-4), Rule 23(b)(1), (2), or (3), and/or Rule 23(c)(4) of the Federal Rules of Civil Procedure.

67. **Numerosity** (Fed. R. Civ. P. 23(a)(1)). The members of the proposed Classes are each so numerous that their individual joinder would be impracticable. While the exact number is not known at this time, it is generally ascertainable by appropriate discovery, and it is believed each Class includes many tens of thousands of members. The precise number of class members, and their addresses, are unknown to Plaintiffs at this time but can be ascertained from Defendant's records.

68. **Ascertainability.** The Class is ascertainable because its members can be readily identified using business records, and other information kept by Defendant in the usual course of

business and within its control. Plaintiffs anticipate providing appropriate notice to the Class to be approved by the Court after class certification, or pursuant to court order.

69. **Commonality and Predominance** (Fed. R. Civ. P. 23(a)(2); 23(b)(3)). Common questions of law and fact exist as to all class members. These questions predominate over the questions affecting only individual class members. The common legal and factual questions include, without limitation:

(a) Whether Defendant's marketing claims about the Product are misleading to a reasonable consumer;

(b) Whether Defendant engaged in the conduct alleged in this Complaint;

(c) Whether Defendant violated the applicable statutes alleged herein;

(d) Whether Plaintiffs and the class members are injured and harmed directly by Defendant's conduct;

(e) Whether Plaintiffs and the class members are entitled to damages due to Defendant's conduct as alleged in this Complaint, and if so, in what amounts;

(f) Whether Plaintiffs and the class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief as requested in this Complaint;

(g) Whether Plaintiffs and the Classes are entitled to actual, compensatory, nominal, statutory, enhanced, and/or punitive damages;

(h) Whether Plaintiffs and the Classes are entitled to injunctive, declaratory relief, or other equitable relief;

(i) Whether Plaintiffs and the Classes are entitled to civil penalties; and

(j) Whether Plaintiffs and the Classes are entitled to reasonable attorneys' fees and costs.

70.    **Typicality of Claims** (Fed. R. Civ. P. 23(a)(3)). The claims of Plaintiffs and the putative class members are based on the same legal theories and arise from the same unlawful and willful conduct of Defendant, resulting in the same injury to Plaintiffs and the putative class members. Plaintiffs and all class members are similarly affected by Defendant's wrongful conduct, were damaged in the same way, and seek the same relief. Plaintiffs' interests coincide with, and are not antagonistic to, those of the other class members. Plaintiffs have been damaged by the same wrongdoing set forth in this Complaint.

71.    **Adequacy of Representation** (Fed. R. Civ. P. 23(a)(4)). Plaintiffs are adequate representatives of the Classes because their interests do not conflict with the interests of the class members, and they have retained competent and experienced class counsel. Plaintiffs and their counsel will fairly and adequately protect the interest of the class members.

72.    **Superiority of a Class Action** (Fed. R. Civ. P. 23(b)(3)). A class action is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs and class members. There is no special interest in class members individually controlling the prosecution of separate actions. The damages suffered by individual class members, while significant, are small given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. Further, it would be virtually impossible for the class members individually to redress effectively the wrongs done to them. And, even if class members themselves could afford such individual litigation, the court system could not, given the tens or even hundreds of thousands of cases that would need to be filed. Individualized litigation would also present a potential for inconsistent or contradictory judgments. Individualized litigation would increase the delay and expense to all parties and the court system, given the complex legal and factual issues involved. By contrast, the class action device presents far fewer management

difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

73. **Risk of Inconsistent or Dispositive Adjudications and the Appropriateness of Final Injunctive or Declaratory Relief** (Fed. R. Civ. P. 23(b)(1) and (2)). In the alternative, this action may properly be maintained as a class action, because:

(a) the prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudication with respect to individual class members, which would establish incompatible standards of conduct for Defendant; or

(b) the prosecution of separate actions by individual class members would create a risk of adjudications with respect to individual class members which would, as a practical matter, be dispositive of the interests of other class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or

(c) Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Classes as a whole.

### FIRST CAUSE OF ACTION

#### Violations of New York Gen. Bus. Law § 349
#### (On Behalf of Plaintiff Vergien and the New York Subclass)

74. Plaintiff Vergien incorporates by reference all allegations in this Complaint and restate them as if fully set forth herein.

75. NY GBL § 349 declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."

76.     NY GBL § 349 applies to Plaintiff Vergien and the New York Subclass because the State of New York has a strong interest in protecting its residents from false advertising and deceptive business practices by companies marketing consumer goods within the state.

77.     Any person who has been injured by reason of any violation of NY GBL § 349 may bring an action in his or her own name to enjoin such unlawful acts or practices, an action to recover their actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not exceeding three times the actual damages, in addition to one thousand dollars per violation, if the court finds that the Defendant willfully or knowingly violated this section. The court may award reasonable attorneys' fees to a prevailing plaintiff.

78.     The practices employed by Defendant, by which it labels and markets the Lemonade Products, are materially misleading and deceptive within the meaning of NY GBL § 349. Defendant markets the Lemonade Products as containing "No Artificial Flavors" and being "Naturally Flavored," when they contain manufactured citric acid, an artificial food and beverage additive designed to impart flavor.

79.     Defendant's acts and practices deceived Plaintiff and the New York Subclass. Plaintiff and the Subclass reasonably relied on these representations and believed they were purchasing products free from artificial flavors.

80.     Plaintiff and the New York Subclass did not receive the benefit of their bargain. They paid a price premium for products falsely marketed as containing "No Artificial Flavors" and being "Naturally Flavored." The Lemonade Products were not capable of delivering on the promises Defendant made in its labeling and marketing materials.

81.     Defendant disseminated these false and misleading statements throughout New York, which were known, or should have been known through reasonable care, to be untrue and misleading to consumers, including Plaintiff and the New York Subclass.

82.     Plaintiff and the New York Subclass have been injured by Defendant's deceptive acts or practice, suffering an ascertainable loss by paying more for a product than they otherwise would have but for the false advertising.

83.     Plaintiff and the New York Subclass have no adequate remedy at law.

84.     Defendant's conduct has caused and continues to cause immediate and irreparable injury to Plaintiff and the New York Subclass and will continue to mislead consumers unless enjoined by this Court.

**SECOND CAUSE OF ACTION**

**Violations of New York Gen. Bus. Law § 350**
**(On Behalf of Plaintiff Vergien and the New York Subclass)**

85.     Plaintiff Vergien incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

86.     By reason of the acts set forth above, Defendant has been and is engaged in consumer-oriented advertising and marketing against Plaintiff and class members located in New York, engaging in business conduct that is false and misleading in material respects, in violation of NY GBL § 350, which provides, in part, that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

87.     Defendant caused statements that were untrue or misleading, and which they knew to be untrue or misleading, to be disseminated throughout New York State and elsewhere, through labeling, marketing, or other publications.

88.     Defendant's misrepresentations were material and substantially uniform in content, presentation, and impact upon consumers at large. Consumers were and continue to be exposed to Defendant's material misrepresentations.

89.     Plaintiff and the New York Subclass have been injured by Defendant's deceptive acts or practices.

90.     Plaintiff and the New York Subclass have no adequate remedy at law.

91.     Defendant's conduct has caused and is causing immediate and irreparable injury to Plaintiff and the New York Subclass and will continue to damage both Plaintiff and the New York Subclass and deceive the public unless enjoined by this Court.

92.     Pursuant to NY GBL § 350-e, Plaintiff and the New York Subclass seek monetary damages (including actual damages or $500, whichever is greater, and minimum, punitive, or treble and/or statutory damages pursuant to NY GBL § 350-a(1)), injunctive relief, restitution, and disgorgement of all monies obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

93.     Defendant's conduct has also substantially injured the public, as consumers across New York were exposed to and relied upon Defendant's false labeling and marketing in deciding to purchase the Lemonade Products. By marketing the Lemonade Products as containing "No Artificial Flavors" and being "Naturally Flavored," despite containing an artificial flavor, Defendant misled reasonable consumers into paying a premium for a product that cannot deliver the advertised benefits. The widespread deception not only caused financial harm to consumers and eroded trust in the truth of product labeling and marketing.

94.      Defendant's conduct thus caused real-world harm and poses an ongoing risk of further injury if not enjoined.

## THIRD CAUSE OF ACTION

### Violations of Consumers Legal Remedies Act (the "CLRA")
### California Civil Code § 1750, *et seq.*
### (On Behalf of Plaintiff Nelson and the California Subclass)

95. Plaintiff Nelson incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

96. Defendant's actions, representations and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale or lease of goods or services to consumers.

97. Plaintiff and other California Subclass members are "consumers" as that term is defined by the CLRA in California Civil Code § 1761(d).

98. The Lemonade Products that Plaintiff (and other similarly situated California Subclass members) purchased from Defendant were "goods" within the meaning of California Civil Code § 1761(a).

99. By engaging in the actions, representations, and conduct set forth in the Complaint, Defendant has violated, and continues to violate §§ 1770(a)(5), 1770(a)(7), and 1770(a)(9) of the CLRA.

100. In violation of § 1770(a)(5), Defendant's acts and practices constitute improper representations that the goods it sells have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities, which they do not have.

101. In violation of § 1770(a)(7), Defendant's acts, practices, and omissions constitute improper representations that the goods it sells are of a particular standard, quality, or grade, when they are of another.

102. In violation of § 1770(a)(9), Defendant has advertised goods or services with intent not to sell them as advertised.

103. Defendant's acts, practices, and omissions, set forth above, led consumers to falsely believe that the Lemonade Products are free from artificial flavors.

104. In reality, the Lemonade Products contain manufactured citric acid, an artificial food and beverage additive designed to impart flavor.

105. Plaintiff Nelson reasonably relied on Defendant's representations and omissions. The representations and omissions were material because a reasonable consumer would consider whether the Products contain artificial flavors as an important factor in deciding whether to purchase the products. The representations and omissions were a substantial factor in Plaintiff's decision to purchase the Lemonade Products.

106. Defendant's violations of the CLRA directly and proximately caused injury in fact and damages to Plaintiff Nelson and the California Subclass. Absent Defendant's misrepresentations and omissions, Plaintiff would not have purchased the Lemonade Products or would have paid substantially less for them.

107. Plaintiff Nelson seeks relief for violations of the CLRA in the form of restitution, and/or disgorgement of ill-gotten gains to compensate and make whole Plaintiff and the California Subclass. Restitution is appropriate because it is more certain, prompt, and efficient as compared to damages. Further, to obtain a full refund as damages, Plaintiff would have to show that the Lemonade Products have no market value, whereas that showing is not required for restitution. Plaintiff reserves the right to amend the Complaint to seek damages under the CLRA.

108. Plaintiff Nelson also seeks injunctive relief in the form of an order enjoining Defendant from continuing to deceptively market the Lemonade Products. Injunctive relief is appropriate because Defendant continues to deceptively market the Lemonade Products as containing "No Artificial Flavors" and being "Naturally Flavored," when they contain

- 31 -

manufactured citric acid, an artificial food and beverage additive designed to impart flavor. Injunctive relief is therefore necessary to prevent Defendant from continuing to engage in the unlawful conduct and to prevent future harm to Plaintiff and the California Subclass, which cannot be achieved through available legal remedies.

## FOURTH CAUSE OF ACTION

**Violations of California Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**(On Behalf of Plaintiff Nelson and the California Subclass)**

109. Plaintiff Nelson incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

110. California Business & Professions Code, sections 17200, *et seq.* (the "UCL") prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

111. Defendant's false and misleading advertising claims regarding the Lemonade Products violate all three prongs—unlawful, unfair, and fraudulent—of the UCL.

112. First, Defendant's representations and omissions regarding the Lemonade Products are unlawful because they are misleading to a reasonable consumer and violate the CLRA, FAL, and NY GBL, as alleged herein.

113. Second, Defendant's conduct violates the "unfair" prong of the UCL because Defendant's representations and omissions regarding the Lemonade Products are illegal, immoral, unscrupulous, and substantially injurious to consumers, and the negative impact on consumers outweighs any reasons, justifications, or motives for Defendant's conduct.

114. Third, Defendant's conduct violates the "fraudulent" prong of the UCL because Defendant's representations and omissions are likely to deceive members of the public.

115.    Plaintiff Nelson reasonably relied on Defendant's representations and omissions. The representations and omissions were material because a reasonable consumer would consider whether the Lemonade Products contain artificial flavors as an important factor in deciding whether to purchase them. The representations and omissions were a substantial factor in Plaintiff's decision to purchase the products.

116.    As a direct and proximate result of Defendant's violations of the UCL, Plaintiff Nelson and the California Subclass have suffered injury in fact and have lost money. Plaintiff and the California Subclass paid an unwarranted premium for the Lemonade Products and/or were denied the benefit of the bargain.

117.    Absent Defendant's misrepresentations and omissions, Plaintiff Nelson would not have purchased the Lemonade Products or would have paid substantially less for them.

118.    Plaintiff Nelson seeks relief for violations of the UCL in the form of restitution, and/or disgorgement of ill-gotten gains to compensate and make whole Plaintiff and the California Subclass. Restitution is appropriate because it is more certain, prompt, and efficient as compared to damages. Further, to obtain a full refund as damages, Plaintiff would have to show that the Lemonade Products have no market value, whereas that showing is not required for restitution.

119.    Plaintiff Nelson also seeks injunctive relief in the form of an order enjoining Defendant from continuing to deceptively market the Lemonade Products. Injunctive relief is appropriate because Defendant continues to deceptively market the Lemonade Products as containing "No Artificial Flavors" and being "Naturally Flavored," when they contain manufactured citric acid, an artificial food and beverage additive designed to impart flavor. Plaintiff would like to purchase Lemonade Products from Defendant in the future if she could have confidence regarding the truth of Defendant's marketing claims, but in the absence of injunctive

relief she will be left to guess whether the claims are accurate. Injunctive relief is therefore necessary to prevent Defendant from continuing to engage in the unlawful conduct and to prevent future harm to Plaintiff and the California Subclass, which cannot be achieved through available legal remedies.

## FIFTH CAUSE OF ACTION

**Violations of California False Advertising Law ("FAL")**
**Cal. Bus. & Prof. Code §§ 17500, *et seq*.**
**(On Behalf of Plaintiff Nelson and the California Subclass)**

120.    Plaintiff Nelson incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

121.    The False Advertising Law, codified at Cal. Bus. & Prof. Code section 17500, *et seq.*, prohibits "unfair, deceptive, untrue or misleading advertising[.]"

122.    The FAL prohibits not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood, or tendency to deceive or confuse the public.

123.    Defendant violated section 17500 when it advertised and marketed the Lemonade Products through the unfair, deceptive, and misleading representations and omissions disseminated to the public that the Lemonade Products were free from artificial flavors. In reality, the Lemonade Products contain manufactured citric acid, an artificial food and beverage additive designed to impart flavor.

124.    Plaintiff Nelson reasonably relied on Defendant's representations and omissions. The representations and omissions were material because a reasonable consumer would consider whether the Products contain artificial flavors as an important factor in deciding whether to purchase them. The representations and omissions were a substantial factor in Plaintiff's decision to purchase the products.

125.     As a direct and proximate result of Defendant's violations of the FAL, Plaintiff Nelson and the California Subclass have suffered injury in fact and have lost money. Plaintiff Nelson and the California Subclass paid an unwarranted premium for the Lemonade Products and/or were denied the benefit of the bargain.

126.     Absent Defendant's misrepresentations and omissions, Plaintiff Nelson would not have purchased the Lemonade Products or would have paid substantially less for them.

127.     Plaintiff Nelson seeks relief for violations of the FAL in the form of restitution, and/or disgorgement of ill-gotten gains to compensate and make whole Plaintiff and the California Subclass. Restitution is appropriate because it is more certain, prompt, and efficient as compared to damages. Further, to obtain a full refund as damages, Plaintiff would have to show that the products have no market value, whereas that showing is not required for restitution.

128.     Plaintiff Nelson also seeks injunctive relief in the form of an order enjoining Defendant from continuing to deceptively market the Lemonade Products. Injunctive relief is appropriate because Defendant continues to deceptively market the Lemonade Products as containing "No Artificial Flavors" and being "Naturally Flavored," when they contain manufactured citric acid, an artificial food and beverage additive designed to impart flavor. Injunctive relief is therefore necessary to prevent Defendant from continuing to engage in the unlawful conduct and to prevent future harm to Plaintiff and the California Subclass, which cannot be achieved through available legal remedies.

### SIXTH CAUSE OF ACTION

**Unjust Enrichment**
**(On Behalf of Plaintiffs and All Classes)**

129.     Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

130.     Plaintiffs and members of the Class conferred a tangible economic benefit on Defendant in the form of monetary payments for Lemonade Products, which were purchased based on Defendant's representations regarding the lack of artificial flavors.

131.     Defendant knowingly accepted and retained these financial benefits under circumstances that make such retention unjust. Defendant marketed and sold the Lemonade Products as containing "No Artificial Flavors" and being "Naturally Flavored," claims that were false, misleading, and not substantiated by the actual composition of the Lemonade Products.

132.     Plaintiffs and members of the Class did not receive the full value of what they paid for. Had they known the truth, Plaintiffs and members of the proposed classes would not have purchased the Lemonade Products or would have paid significantly less.

133.     It would be inequitable for Defendant to retain the profits from the sale of these deceptively marketed Lemonade products, as the enrichment was obtained through false and misleading labeling and marketing, omissions of material fact, and a campaign designed to create the false impression that the Lemonade Products were free from artificial flavors.

134.     Defendant's conduct has therefore caused and is causing immediate and irreparable injury to Plaintiffs and the class members and will continue to both damage Plaintiffs and the class members and deceive the public unless enjoined by this Court.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the proposed Classes, pray for relief and judgment against Defendant as follows:

A.     certifying the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as representatives of the Classes, and designating Plaintiffs' counsel as Class Counsel;

B.    awarding Plaintiffs and the Classes compensatory damages and actual damages, trebled, in an amount exceeding $5,000,000, to be determined by proof;

C.    awarding Plaintiffs and the Classes appropriate relief, including actual and statutory damages;

D.    awarding Plaintiffs and the Classes exemplary and punitive damages;

E.    awarding Plaintiffs and the Classes civil penalties;

F.    granting Plaintiffs and the Classes declaratory and equitable relief, including restitution and disgorgement;

G.    enjoining Defendant from continuing to engage in the wrongful acts and practices alleged herein;

H.    awarding Plaintiffs and the Classes the costs of prosecuting this action, including expert witness fees;

I.    awarding Plaintiffs and the Classes reasonable attorneys' fees and costs as allowable by law;

J.    awarding pre-judgment and post-judgment interest; and

K.    granting any other relief as this Court may deem just and proper.

## **<u>JURY TRIAL DEMANDED</u>**

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: December 22, 2025

Respectfully submitted,

*/s/ Raphael Janove*
Raphael Janove (IL Bar No. 6328523)
**JANOVE PLLC**
500 7th Ave., 8th Floor
New York, NY 10018
(646) 347-3940
raphael@janove.law